UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| BRANDON GREEN, | |
| Plaintiff, | |
| v. | CAUSE NO. 3:25-CV-84-CCB-SJF |
| CHRISTINA REAGLE, et al., | |
| Defendants. | |

## OPINION AND ORDER

Brandon Green, a prisoner without a lawyer, was ordered to show cause why the initial partial filing fee was not paid. (ECF 6.) After the order issued, a portion of the fee was received. (ECF 7.) The case will proceed to screening, but Green is reminded that he remains obligated to pay the full amount of the fee in installments over time.

Under 28 U.S.C. § 1915A, the court must screen the complaint and dismiss it if it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. To survive dismissal, a complaint must contain sufficient factual matter to state a claim that is "plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Because Green is proceeding without counsel, the court must give his allegations liberal construction. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

Green is an inmate at Indiana State Prison ("ISP"). His complaint is somewhat difficult to decipher, but his claims appear to stem from a class action lawsuit litigated in the U.S. District Court for the Southern District of Indiana pertaining to inmates with severe mental illness. *See Ind. Protection & Advocacy Serv. Comm., et al., v. Commissioner*, No. 1:08-CV-1317-TWP-MJD (S.D. Ind. closed Mar. 24, 2016). He claims that he has been designated as Seriously Mentally Ill ("SMI"), a classification used by the Indiana Department of Correction ("IDOC") to delineate inmates with chronic mental health conditions, although he does not detail the nature of his condition. As best as can be discerned, he claims that former IDOC Commissioner Christina Reagle agreed to certain terms in the class action case pertaining to holding mentally ill inmates in segregation, but then adopted a policy that changed certain terms.

He claims to have been placed in segregation for more than 30 days, which he believes to be a violation of his rights. He does not state how long he was in segregation in total. He claims that while in segregation he experienced "decompensation," but he does not provide details about what happened or what symptoms he experienced. He alleges that Dr. Smith and Dr. Sims (first names unknown) were deliberately indifferent to his mental health needs in some unspecified way. Based on these events, he sues former Commissioner Reagle, Dr. Smith, Dr. Sims, Centurion of Indiana ("Centurion"), and Unit Team Manager Pam Banes for money damages and other relief.

The Fourteenth Amendment Due Process Clause does not create a liberty interest in remaining in the prison's general population. *See Wilkinson v. Austin*, 545 U.S. 209, 222 (2005); *Sandin v. Conner*, 515 U.S. 472, 484 (1995). Instead, "an inmate's liberty

2

interest in avoiding segregation is limited." *Hardaway v. Meyerhoff*, 734 F.3d 740, 743 (7th Cir. 2013). To trigger a liberty interest, an inmate must be subjected to restrictive conditions that present a "significant and atypical hardship" in relation to the ordinary incidents of prison life. *Sandin*, 515 U.S. at 484-85. There is no firm rule as to the amount of time that must be spent in segregation to trigger a liberty interest, and instead courts must "look to both the duration of the segregation and the conditions endured." *Lisle v. Welborn*, 933 F.3d 705, 721 (7th Cir. 2019). As to the conditions, it is not enough that they are "more severe than those found in the general prison population." *Hardaway*, 734 at 744. Instead, they must be in the vein of depriving a prisoner of "all human contact or sensory stimuli." *Id.*

Green does not provide details about how long he was in segregation, other than to state that it was more than 30 days.[1] He also does not describe any restrictive conditions in the segregation unit for the court to plausibly infer that he was subjected to a significant and atypical hardship in relation to the ordinary incidents of prison life. *Id.* at 743 (a few months in segregation did not trigger a liberty interest "in the absence of exceptionally harsh conditions"). The mere fact that he was moved to segregation for a temporary period of unspecified duration is not enough to trigger a due process liberty interest. *Wilkinson*, 545 U.S. at 222; *see also Swanson v. Citibank, N.A.*, 614 F.3d 400, 403 (7th Cir. 2010) ("putting a few words on paper that, in the hands of an

---

[1] He mentions a date of February 26, 2023, but it is unclear what happened on that date. (*See* ECF 2 at 1.) It appears this may have been the date a new policy related to SMI inmates was adopted.

3

imaginative reader, *might* suggest that something has happened . . . that *might* be redressed by the law" is not enough to state a claim).

He may be claiming that his detention in segregation violated prison policies related to inmates with an SMI designation, but violations of prison policy are not actionable under 42 U.S.C. § 1983. *Scott v. Edinburg*, 346 F.3d 752, 760 (7th Cir. 2003) ("42 U.S.C. § 1983 protects plaintiffs from constitutional violations, not violations of state laws or . . . departmental regulations"). To the extent he is claiming that Commissioner Reagle violated the orders entered in the class action case, the appropriate course would be to raise that issue with the court that entered the orders (or the attorney who represented the class), not to bring a new federal lawsuit in a different District. He has not alleged a plausible Fourteenth Amendment claim.

His allegations also trigger Eighth Amendment concerns, as inmates are entitled to adequate medical care under the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To assert a violation of this right, a prisoner must show (1) he had an objectively serious medical need and (2) the defendant acted with deliberate indifference to that medical need. *Id.* A medical need is "serious" if it is one that a physician has diagnosed as mandating treatment, or one that is so obvious even a lay person would recognize as needing medical attention. *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005).

On the second prong, deliberate indifference represents a high standard. "[N]egligence, gross negligence, or even recklessness as the term is used in tort cases is not enough" to assert an Eighth Amendment violation. *Hildreth v. Butler*, 960 F.3d 420,

4

425–26 (7th Cir. 2020). Instead, the inmate must allege "a culpability standard akin to criminal recklessness." *Thomas v. Blackard*, 2 F.4th 716, 722 (7th Cir. 2021). Inmates are "not entitled to demand specific care," *Walker v. Wexford Health Sources, Inc.*, 940 F.3d 954, 965 (7th Cir. 2019), nor are they entitled to "the best care possible." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). Rather, they are entitled to "reasonable measures to meet a substantial risk of serious harm." *Forbes*, 112 F.3d at 267. The court must "defer to medical professionals' treatment decisions unless there is evidence that no minimally competent professional would have so responded under those circumstances." *Walker*, 940 F.3d at 965 (citation and internal quotation marks omitted). In effect, the Eighth Amendment protects prisoners from "grossly inadequate medical care." *Gabb v. Wexford Health Sources, Inc.*, 945 F.3d 1027, 1033 (7th Cir. 2019) (citation omitted).

The court will presume that Green has a serious medical need in connection with his mental health problems. However, on the second prong, he does not provide any details about what Dr. Sims and Dr. Smith did—or did not do—related to his care for the court to plausibly infer deliberate indifference on their part. He has not plausibly alleged that he received grossly inadequate care from these doctors.

Likewise, he cannot sue Centurion merely because it employs medical staff at the prison. *J.K.J. v. Polk Cty.*, 960 F.3d 367, 377 (7th Cir. 2020). A private company performing a public function can be sued under *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978), but only if the "unconstitutional acts of their employees . . . were carried out pursuant to an official custom or policy." *Grieveson v. Anderson*, 538 F.3d 763, 771 (7th Cir. 2008) (citations omitted). The purpose of this requirement is to

5

"distinguish between the isolated wrongdoing of one or a few rogue employees and other, more widespread practices." *Howell v. Wexford Health Sources, Inc.*, 987 F.3d 647, 654 (7th Cir. 2021). To allege a plausible *Monell* claim, the plaintiff must identify an official corporate policy that caused him injury. *Grieveson*, 538 F.3d at 771. Alternatively, a plaintiff pursuing an official custom theory "must allege facts that permit the reasonable inference that the practice is so widespread so as to constitute a governmental custom." *Gill v. City of Milwaukee*, 850 F.3d 335, 344 (7th Cir. 2017).

Green does not clearly allege what corporate policy of Centurion's allegedly caused him injury. Nor does he include factual content plausibly suggesting the existence of a widespread custom of unconstitutional conduct within the company. Indeed, he does not describe his own situation in enough detail for the court to plausibly infer that he was subjected to a constitutional violation. He has not alleged a plausible Eighth Amendment claim against Centurion.

As to Manager Banes, her name does not appear in the narrative section of his complaint and it is unclear how, if at all, she was personally involved in these events. She can only be held liable for her own actions, not for the "misdeeds" of other prison staff. *Burks v. Raemisch*, 555 F.3d 592, 596 (7th Cir. 2009). He alleges that "defendants" (collectively) acted with deliberate indifference, but these general allegations do not suffice to state a plausible claim against Manager Banes personally. *Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009) (allegations that referred to "defendants" collectively without connecting specific defendants to specific acts were insufficient under federal pleading standards); *see also Henderson v. Wall*, No. 20-1455, 2021 WL 5102915, at *1 (7th

6

Cir. Nov. 3, 2021) ("[B]y making allegations about large, indeterminate groups of defendants, [the plaintiff] deprived them all of proper notice of what they were accused of doing.").

Therefore, the complaint does not state a claim for relief.[2] "[L]itigants in this circuit are ordinarily given the chance to amend their pleadings once as a matter of course" before a case is dismissed. *Newson v. Superior Ct. of Pima Cnty.*, 784 F. App'x 964, 965 (7th Cir. 2019); *see also Luevano v. Wal-Mart*, 722 F.3d 1014, 1022 (7th Cir. 2013). Green may file an amended complaint if he believes he can state a plausible constitutional claim based on these events, consistent with the allegations he has already made under penalty of perjury.

For these reasons, the court:

(1) **GRANTS** the plaintiff until **July 11, 2025**, to file an amended complaint; and

(2) **CAUTIONS** him that if he does not file an amended complaint, this case is subject to dismissal under 28 U.S.C. § 1915A because the current complaint does not state a claim for relief.

SO ORDERED on June 11, 2025.

/s/*Cristal C. Brisco*
CRISTAL C. BRISCO, JUDGE
UNITED STATES DISTRICT COURT

---

[2] The court has considered whether he is claiming to have a current need for mental health treatment that is not being met. However, from what he has alleged the court cannot discern an ongoing problem with his care, and he does not ask for any relief related to his treatment. (*See* ECF 2 at 5.) If the court has misunderstood him, he is free to outline any current need for mental health treatment in his amended complaint.